# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-9687 CAS (AGRx) | Date | May 16, 2011 |
|----------|----------------------|------|--------------|
| Title | ANTHONY N. OZOGU, ETC.; ET AL. v. CITIMORTGAGE, INC.; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|------------------------|---------------------|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|-----------------------------------|-----------------------------------|
| Jesus Perez | Jonathan Zak |

**Proceedings:** **PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** (filed 05/04/11)

## I. INTRODUCTION

On October 22, 2010, plaintiffs Anthony N. Ozogu and Regina O. Thomas filed suit in Los Angeles County Superior Court against CitiMortgage, Inc. ("CitiMortgage"); CITIMORTGAGE, INC.; Citibank, N.A. ("Citibank"); CR Title Services ("CR Title"); First American Title Insurance Co. ("First American"); Merscorp, Inc.; Mortgage Electronic Registration Systems, Inc. ("MERS"); Pacifica L. Nineteen, LLC ("Pacifica"); Orion Financial Group, Inc. ("Orion"); IServe Servicing, Inc. ("iServe"); Virkam S. Pandit; Sanjiv Das; Deepak Israni; Mike E. Wileman; Richard Cimino; R.K. Arnold; Jennifer Welborn (erroneously sued as Jennifer Wellborn); Tameka Harris; Aaron Doty; Pam January; Richard Martinez; J. Florez; Kristen B. Linder; and Does 1 through 15 inclusive (collectively, "defendants"). On December 16, 2010, Pacifica, iServe, Israni, Cimino, and Welborn removed the action to federal court based on subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b).

On May 4, 2011, plaintiffs voluntarily dismissed without prejudice defendants CR Title; First American; Merscorp, Inc.; Orion; Virkam S. Pandit; Sanjiv Das; Deepak Israni; Mike E. Wileman; Richard Cimino; R.K. Arnold; Jennifer Welborn (erroneously sued as Jennifer Wellborn); Tameka Harris; Aaron Doty; Pam January; Richard Martinez; J. Florez; and Kristen B. Linder. See Dkt. 25.

On May 4, 2011, plaintiffs filed the instant ex parte application for a temporary restraining order. On May 6, 2011, Pacifica and iServe filed an opposition to plaintiffs'

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9687 CAS (AGRx) | Date | May 16, 2011 |
|---|---|---|---|
| Title | ANTHONY N. OZOGU, ETC.; ET AL. v. CITIMORTGAGE, INC.; ET AL. | | |

application.  CitiMortgage and Citibank have not opposed plaintiffs' application.  After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II.    BACKGROUND FACTS

The instant action arises from a mortgage loan transaction secured by plaintiffs' real property located at 19322 Ackermen Avenue, Santa Clarita, California (the "Property").  Complaint ¶ 8, Ex. 1.  On December 17, 2007, Ozogu executed a promissory note in the amount of $417,000 ("Note") in favor of CitiMortgage.  Complaint, Ex. 1.  The Note was secured with a Deed of Trust ("DOT 1") against the Property, executed by both Ozogu and his wife Thomas (collectively, "plaintiffs").  Complaint, Ex. 4.  The original trustee named in DOT 1 was Verdugo Trustee Services Corporation ("Verdugo"), and MERS was the nominee beneficiary for CitiMortgage and its assigns.  Complaint, Ex. 4.

In October 2009, plaintiffs attempted to obtain a loan modification from CitiMortgage due to "their changing financial situation and . . . hardships they were experiencing."  Complaint ¶ 152.  Plaintiffs allege that they were placed in a three month trial modification period in November 2009, wherein their loan payments were reduced from $2,567.94 to $1,227.00 per month.  Complaint ¶ 152.  Plaintiffs allege that the trial modification period lasted five months and that they paid the reduced amount to CitiMortgage each month.  Complaint ¶ 152.  Plaintiffs allege that despite accepting their modified loan payment for March 2010, CitiMortgage ultimately rejected their application for a more permanent loan modification in February 2010.  Complaint ¶ 153.  In a letter dated April 30, 2010, CitiMortgage officially denied plaintiffs' loan modification request.  Complaint, Ex. 16.

In an assignment of Deed of Trust dated April 16, 2010, MERS assigned all beneficial interest under DOT 1 to "CITIMORTGAGE, INC."[1]  Also on April 16, 2010, CITIMORTGAGE, INC. substituted CR Title as trustee for Verdugo, and CR Title

---

[1] Plaintiffs allege that CITIMORTGAGE, INC. and CitiMortgage are distinct entities.

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9687 CAS (AGRx) | Date | May 16, 2011 |
|----------|----------------------|------|--------------|
| Title | ANTHONY N. OZOGU, ETC.; ET AL. v. CITIMORTGAGE, INC.; ET AL. | | |

executed a Notice of Default and Election to Sell to the Property. Complaint, Exs. 6–7. Plaintiffs allege that they received the Notice of Default and Election to Sell on April 21, 2010. Complaint ¶ 155. Plaintiffs further allege that on April 27, 2010, plaintiffs received a letter from CitiMortgage indicating that their Workable Solution application for internal loan modification was denied due to plaintiffs' Net Present Value ("NPV"). Complaint ¶ 156. Plaintiffs allege that a CitiMortgage representative named "Ginger" with ID # GC43156 researched plaintiffs' application and determined that CitiMortgage did not include all of plaintiffs' household income in its calculation of plaintiffs' NPV. Complaint ¶ 156. Plaintiffs allege that they wrote CitiMortgage a letter disputing CitiMortgage's decision to deny their application for loan modification, but that CitiMortgage never replied. Complaint ¶ 156.

Plaintiffs allege that on May 13, 2010, a third party, Selena Davis, informed them that CitiMortgage agreed to re-evaluate their application for a loan modification. Complaint ¶ 160. On July 22, 2010, however, Davis informed plaintiffs that their loan had been sold to an unknown third party. Complaint ¶ 161. The following day, Ozogu called CitiMortgage and spoke to Kelly with ID # KC78477, who confirmed that the loan had been sold to an undisclosed company. Complaint ¶ 161. In fact, on July 26, 2010, CitiMortgage executed a document formally assigning DOT 1 to the new owner of the loan, Pacifica. Complaint, Ex. 9. On August 1, 2010, plaintiffs received a letter from CitiMortgage indicating that the new servicer for their loan was iServe. Complaint ¶ 162.

Plaintiffs allege that they applied for a loan modification with iServe. Complaint ¶ 163. On September 16, 2010, Welborn, iServe's loan counselor, contacted Ozogu and informed him that iServe was not willing to modify the loan because CitiMortgage had previously denied plaintiffs' loan modification application. Complaint ¶ 165. Plaintiffs allege that they explained to Welborn that CitiMortgage delayed re-evaluating their application for a loan modification, but Welborn was unmoved. Complaint ¶ 165. Nevertheless, in a telephone call on September 24, 2010, Welborn requested that plaintiffs send her a document from CitiMortgage detailing the status of plaintiffs' request for a loan modification. Complaint ¶ 170. Plaintiffs allege that CitiMortgage never provided them such documentation. Complaint ¶¶ 170–72.

On September 9, 2010, an assignment of CitiMortgage's beneficial interest under DOT 1 to Pacifica was recorded in the Los Angeles County Recorder's Office.

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-9687 CAS (AGRx) | Date | May 16, 2011 |
|----------|----------------------|------|--------------|
| Title | ANTHONY N. OZOGU, ETC.; ET AL. v. CITIMORTGAGE, INC.; ET AL. | | |

Complaint ¶ 247, Ex. 9.  On October 4, 2010, CR Title recorded a Notice of Trustee's Sale in the County Recorder's Office.  Complaint, Ex. 10.  According to plaintiffs, the foreclosure sale on the property is now scheduled for May 17, 2011, at 10:30 a.m.  Mot. at 2.

## III.   LEGAL STANDARD

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.  See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977).  A preliminary injunction is an "extraordinary remedy."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 375 (2008).  The Ninth Circuit summarized the Supreme Court's recent clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009) ("Cal Pharm. I").  Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011).  A "serious question" is one on which the movant "has a fair chance of success on the merits."  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

## IV.   DISCUSSION

### A.   Success on the Merits/Serious Legal Questions

Plaintiffs' 121 page complaint advances 22 separate claims for relief in 617 paragraphs.[2]  Based on plaintiffs' application, it is unclear for which claims they seek a

---

[2] Plaintiffs assert federal claims for: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.; (2) disclosure violations, 15 U.S.C. § 1635 et

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9687 CAS (AGRx) | Date | May 16, 2011 |
|---|---|---|---|
| Title | ANTHONY N. OZOGU, ETC.; ET AL. v. CITIMORTGAGE, INC.; ET AL. | | |

temporary restraining order.  However, it appears that plaintiffs have failed to demonstrate a likelihood of success on the merits or serious question because there is no showing that they have the ability to tender the requisite loan proceeds.[3]  See, e.g., Chen v. PMC Bancorp, No.09cv2704-WQH-BLM, 2010 WL 596421, at *4 (S.D. Cal. Feb. 16, 2010) ("even if Plaintiffs had otherwise demonstrated a likelihood of success on their rescission claims, the Court concludes that Plaintiffs have not demonstrated any chance of success on the merits due to their failure to show the ability to tender."); Montes v. Quality Loan Serv. Corp., No. CV 09-5864 PSG (RCx), 2010 WL 114485, at *5 (C.D.

---

seq.; (3) missing consumer statement in violation of 12 C.F.R. § 226 et seq.; (4) failure to disclose calculation of mortgage balance in violation of 12 C.F.R. § 226.4 et seq.; (5) failure to disclose itemization of charges in or with the acceleration statement in violation of 12 U.S.C. § 2610 et seq.; (6) inflation of acceleration fees in violation of 12 U.S.C. §§ 2610 et seq.; (7) failure to disclose use of settlement fees in violation of Title 12, Regulation Z, and 15 U.S.C. § 1601 et seq.; (8) failure to disclose lower interest rate in violation of 12 U.S.C. § 2601 et seq.; (9) failure to disclose loan origination fee in violation of 12 U.S.C. § 2601 et seq.; (10) failure to give proper notice of default, right to cure and acceleration notice in violation of 12 U.S.C. § 2601 et seq., 15 U.S.C. § 1601 et seq., 12 C.F.R. § 226.18, and Cal. Civ. Code § 2924 et seq.; (11) violation of Ozogu's constitutional right to Due Process under the Fifth Amendment; and (12) violation of Thomas's fundamental right to Due Process under the Fifth Amendment.  Plaintiffs assert state law claims for: (1) fraudulent inducement to breach a contract; (2) fraud in the factum; (3) breach of the implied covenant of good faith and fair dealing; (4) wrongful attempted foreclosure in violation of Cal. Civ. Code § 2924 et seq.; (5) to set aside unlawful transfer against; (6) tortious interference with a contract; (7) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750–1784, Cal. Civ. Code § 1670.5; (8) violation of Cal. Bus. & Prof. Code § 17500; (9) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; and (10) quiet title.

[3] At oral argument, plaintiffs' counsel confirmed that his clients do not have the present ability to tender the loan proceeds or the amount to reinstate the loan.  Instead, plaintiffs' counsel requested that the Court continue the hearing to determine whether his clients could acquire such funds.  In light of the fact that plaintiffs have delayed filing the instant application and have submitted no evidence supporting their ability to tender, the Court denies plaintiffs' request to continue the hearing.

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9687 CAS (AGRx) | Date | May 16, 2011 |
|----------|----------------------|------|--------------|
| Title | ANTHONY N. OZOGU, ETC.; ET AL. v. CITIMORTGAGE, INC.; ET AL. | | |

Cal. Jan. 5, 2010) ("Plaintiff fails to demonstrate a likelihood of success on the merits because Plaintiff fails to allege an ability to tender the full amount of the loan.").

### B.    Undue Delay

The Court recognizes that the "loss of a home is a serious injury." <u>Alcaraz v. Wachovia Mortg. FSB</u>, 592 F. Supp. 2d 1296, 1301 (E.D. Cal. 2009). In deciding whether to enjoin a party from foreclosing on a property, however, the Court may consider equitable defenses, such as laches. <u>See</u> <u>Ines v. Countrywide Home Loans, Inc.</u>, No. 08cv1267 WQH (NLS), 2008 WL 2954990, at *3 (S.D. Cal. July 28, 2008) (denying a TRO, in part, because "Plaintiff's delay and lack of diligence in filing the Second Application for TRO has prejudiced Defendants' ability to defend.") (citing <u>Apache Survival Coalition v. OLA Cassadore Davis</u>, 118 F.3d 663, 665–66 (9th Cir. 1997)). Here, plaintiffs have failed to explain why they did not seek injunctive relief at an earlier date. At a minimum, it appears that plaintiffs have been aware of defendants' desire to initiate foreclosure proceedings on the property for over a year.[4] The Court finds that plaintiffs unduly delayed in seeking injunctive relief and their lack of diligence has prejudiced defendants ability to defend. Therefore, the Court finds that the instant application for a temporary restraining order is barred by the doctrine of laches. <u>See</u> <u>Ines</u>, 2008 WL 2954990, at *3; <u>see also</u> <u>Foster v. SCME Mortg. Bankers, Inc.</u>, No. CIV. 2:10-518 WBS GGH, 2010 WL 1408108, at *1 (E.D. Cal. Apr. 7, 2010) (plaintiff's undue delay in seeking a TRO preventing the foreclosure sale of his home constituted laches and provided a basis for denying the TRO under E.D. Cal. R. 231(b)); <u>Hester v. PHH Mortg.</u>, No. 2:10-cv-01931-GEB- DAD, 2010 WL 2923495, at *4 (E.D. Cal. July 26, 2010) (same); <u>Mammoth Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC</u>, No. CIV S-10-0864 LKK/JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010) (same).

---

[4] According to the complaint, plaintiffs first received the notice of default and election to sell on April 21, 2010. Complaint ¶ 155. Moreover, plaintiffs filed this action more than six months ago, but only recently filed an application for a TRO.

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-9687 CAS (AGRx) | | Date | May 16, 2011 |
|----------|-----------------------|---|------|--------------|
| Title | ANTHONY N. OZOGU, ETC.; ET AL. v. CITIMORTGAGE, INC.; ET AL. | | | |

## V.  CONCLUSION

While plaintiffs face significant harm as a result of the foreclosure of their home, they have not demonstrated a likelihood of success on the merits or serious legal question with respect to their claims against defendants.  Moreover, because they unduly delayed in seeking injunctive relief, the application for a temporary restraining order is barred by the doctrine of laches.  Accordingly, the Court hereby DENIES plaintiffs' application for a temporary restraining order.[5]

IT IS SO ORDERED.

|  | 00 | : | 09 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |

---

[5] "When, as here, a party has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary."  Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007).